**SO ORDERED.**

**SIGNED this 22 day of March, 2019.**



_____
**Joseph N. Callaway**
**United States Bankruptcy Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## WILMINGTON DIVISION

IN RE:

YAHWEH CENTER, INC.,                          Case No. 16-04306-5-JNC
    Debtor                                            Chapter 11
_____

RICHARD P. COOK, Plan Trustee for
Yahweh Center, Inc.,
    Plaintiff,

v.                                                  Adv. Pro. No. 18-00082-5-JNC

CARLA J. ROBERTS, TONY P. ROBERTS,
CHARLES A. BARTON, GLENN R. FOX,
HEATHER C. MUELLER, WILLIAM S. MUELLER,
MICHAEL L. RONCONE, HORACE L. HAWES,
JOSEPH MICHAEL HUTSON, EDWARD C.
ELMORE, III, SUNTRUST BANK, BURT &
ASSOCIATES, LP, CONSILIUM STAFFING, LLC,
FIRST INSURANCE FUNDING CORP., WOLF
HUNTER SECURITY, WILLIS J. ADAIR, and
UNITED STATES OF AMERICA,
    Defendants

### ORDER ALLOWING MOTION TO DISMISS OF THE IRS

       This matter comes before the court on the Motion to Dismiss Adversary Proceeding pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, made applicable to this

adversary proceeding by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure, filed by defendant the United States of America (the "United States") for its agency, the Department of the Treasury, Internal Revenue Service (the "IRS"), on September 24, 2018. (AP D.E. 69; the "Motion").[1] The Plan Trustee filed a Response to the Motion to Dismiss (AP D.E. 119, the "Response") on November 19, 2018. A hearing on the Motion and the Response, as well as several other matters in this case, was noticed for and held on January 23, 2019 in Greenville, North Carolina. Richard P. Cook, the Plan Trustee ("Plan Trustee" or "Plaintiff"), and Ward W. Benson, on behalf of the IRS, appeared at the hearing for argument.

## JURISDICTION

This court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. It is a core proceeding pursuant 28 U.S.C. § 157(b)(2). This court has authority to hear this matter pursuant to the Standing Order of Reference entered by the United States District Court for the Eastern District of North Carolina on August 3, 1984.

## PROCEDURAL HISTORY

Yahweh Center, Inc. (the "Debtor" or "Yahweh") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on August 17, 2016 (the "Petition Date"). Its chapter 11 plan was confirmed on May 26, 2017 (BR D.E. 303). Pursuant to the confirmed plan, Richard P. Cook was appointed as the Plan Trustee. Subsequently, on July 20, 2018, the Plan Trustee filed the complaint in this adversary proceeding (AP D.E. 1, the "Complaint"), containing 421 paragraphs that yield twenty-five specified claims for relief against eighteen defendants. With respect to the IRS, the Plan Trustee seeks to avoid alleged fraudulent obligations (tax penalties) and fraudulent transfers (payments made on tax penalties) pursuant to 11 U.S.C. § 544(b)(1), the sixteenth and

---

[1] References to docket entries in this adversary proceeding will be denominated "AP D.E. __," while references to docket entries in the underlying chapter 11 case will be denominated "BR D.E. __."

seventeenth causes of action respectively, and objects to the claim of the IRS pursuant to 11 U.S.C. § 502(d) in the twenty-fifth cause of action.

## BACKGROUND

The majority of the claims asserted by the Plan Trustee in the Complaint, and the facts that support those claims, do not impact or involve the IRS. Facts pertinent to the claims made against other defendants in this case are set forth in separate orders of the court.

Beginning as early as 2003, Yahweh did not pay wage withholding and employer matching taxes to the IRS. As a result, the IRS began assessing the unpaid payroll taxes and penalties against Yahweh from the fourth quarter of 2004 to the Petition Date. The amount of penalties assessed by the IRS during the period are: (1) 2006: $30,732.42; (2) 2007: $58,188.00; (3) 2008: $27,883.51; (4) 2009: $61,535.27; (5) 2010: $25,475.03; (6) 2011: $24,861.99; (7) 2012: $20,808.60; (8) 2013: $71,815.69; (9) 2014: $107,667.57; and (10) 2015: $61,505.36.[2] Nineteen (19) different tax liens were filed against the Debtor.[3] The failure to pay trust fund taxes resulted in an outstanding withholding tax balance of $202,811.49 on the Petition Date. In the ten years prior to the Petition Date, the IRS assessed over $490,000 in penalties, and collected over $200,000 in penalty payments. In the four years preceding the Petition Date, it assessed over $260,000 in penalties against the Debtor, an unknown portion of which have been paid.[4] Complaint, AP D.E. 1 at ¶¶ 20, 26, 50, 52, 60, 61, 67, 91, 105, 129, 142, 143, 159, 172, 173, 191, 208, 209, 343, 348, 355.

---

[2] The Plan Trustee also alleges that further penalties for tax year 2016 total approximately $50,000, but this amount has not been substantiated by the IRS.

[3] These tax liens were filed in New Hanover, Pender, and Brunswick Counties in North Carolina, as well as with the North Carolina Secretary of State. Complaint, AP D.E. 1 at ¶ 26.

[4] *See* Complaint, AP D.E. 1 at ¶ 143, 159, 173, 191, 209, referencing how much of the combined penalty and interest amount remained unpaid as of the Petition Date.

## STANDARD FOR DISMISSAL

Rule 8(a)(2) of the Federal Rules of Civil Procedure provides that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." If a complaint fails to meet this threshold obligation, the action should be dismissed under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In *Bell Atlantic Corp. v. Twombly*, the United States Supreme Court held that a complaint must include "enough facts to state a claim to relief that is plausible on its face." 550 U.S. 544, 570 (2007). The Court elaborated in *Ashcroft v. Iqbal*, 566 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009), that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and that "only a complaint that states a plausible claim for relief survives a motion to dismiss." The allegations must be more than a "formulaic recitation of the elements" of a claim. 566 U.S. at 681, 129 S. Ct. at 1951.

A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement" as it asks for more than a "sheer possibility" that a defendant has acted unlawfully. 566 U.S. at 679, 129 S. Ct. at 1949. Thus, dismissal under Rule 12(b)(6) is proper when, from the face of the complaint, it is clear that the plaintiff's claims are not supported by law, that one or more facts necessary to assert a valid claim have not been pled, or that facts necessarily exist that defeat the plaintiff's claims.

In reviewing a motion to dismiss under Rule 12(b)(6), the court may review documents attached to the complaint and incorporated by reference, *Clatterbuck v. City of Charlottesville,* 708 F.3d 549, 557 (4th Cir. 2013), and may properly take judicial notice of matters of public record

without converting the motion to one for summary judgment. *Philips v. Pitt County Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citing *Hall v. Virginia*, 385 F.3d 421, 424 (4th Cir. 2004)).

## DISCUSSION

The Plan Trustee seeks to avoid tax penalty obligations incurred by the Debtor and payments made as a result of those penalties as fraudulent pursuant to 11 U.S.C. § 548. He seeks to use the longarm powers afforded by 11 U.S.C. § 544(b)(1) and the North Carolina Voidable Transfer Act ("NCVTA") to avoid the attendant transfers. Contained in the Complaint are allegations that the tax penalties assessed in the four years prior to the Petition Date, totaling close to $260,000, amount to fraudulent obligations and that any payments thereon are fraudulent transfers. Very little else is provided other than an extensive recitation of penalties assessed by the IRS under applicable statutes from the Tax Code resulting from the acknowledged failure of the Debtor, controlled by its principal, Executive Director Carla Roberts, to remit payroll withholding and trust taxes when due, in some cases literally for years.

The Plan Trustee brings all of his avoidance claims against the IRS under 11 U.S.C. § 544(b)(1), which provides in pertinent part:

> [T]he trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of [the Bankruptcy Code] . . . .

11 U.S.C. § 544(b)(1).

In this case, the creditor through which the Plan Trustee asserts his claims under § 544 is the State of North Carolina, Department of Revenue, and the applicable law under which the claims against the IRS are made is the North Carolina Voidable Transfer Act, N.C. Gen. Stat. §§ 39-23.5(a) and 23.7(a)(1), which provides the Plan Trustee a four-year look back period from the Petition Date in which to avoid transfers.

In the Motion, the IRS asserts two reasons that the claims against the Plan Trustee should be dismissed for failure to state a claim upon which relief may be granted. First, the IRS argues that the Plan Trustee has failed to meet the actual creditor requirement of § 544(b)(1), and second, the tax penalties complained of here are not avoidable obligations. These two arguments will be addressed in turn.[5]

### I.  The Plan Trustee has not met the actual creditor requirement of § 544(b)(1)

The IRS contends that the claims of the Plan Trustee fail because the Plan Trustee has not identified a creditor in whose shoes he could stand that could actually bring a claim under § 544(b)(1), maintaining that the Plaintiff here is limited to the rights of the actual creditor, and therefore the claim is subject to all defenses that could be raised against the particular creditor. "[I]f the actual creditor could not succeed for any reason – whether due to the statute of limitations, estoppel, res judicata, waiver, or any other defense – then the trustee is similarly barred and cannot avoid the transfer." *In re Equip. Acquisition Res., Inc.*, 742 F.3d 743, 746 (7th Cir. 2014). In this case, the IRS maintains that there are no creditors that could bring a claim against the IRS due to the doctrine of sovereign immunity, which it asserts bars the Plan Trustee from bringing a derivative action.

Section 106(a)(1) of the Bankruptcy Code provides that "[n]otwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental until to the extent set forth in this section with respect to . . . [s]ections . . . 544 … 547, 548 . . . ." The IRS would have the court view the clear abrogation of sovereign immunity through the lens of a two-step analysis

---

[5] The United States also challenges claims made by the Plan Trustee against other defendants in this adversary proceeding in which the Plan Trustee attempts, pursuant to 11 U.S.C. § 544(b)(1), to utilize a ten (10) year look back period afforded to the IRS under 26 U.S.C § 6502(a)(1) and a six (6) year look back under the Federal Debt Collection Procedures Act. The ability of the Plan Trustee to utilize six- or ten-year statutes is not relevant to the Motion of the IRS before the court here.

proffered by the Seventh Circuit in *Equip. Acquisition Res.*, which would direct the court first to address whether there had been a waiver of sovereign immunity, and secondly whether the source of substantive law upon which the claimant relies provides an avenue for relief. *Equip. Acquisition Res.*, 742 F.3d at 747.  The IRS further argues that the substantive law, in this case the NCVTA, does not provide a claim for relief due to sovereign immunity, as the court found in *Equip. Acquisition Res.* According to the IRS, the claim presented here would therefore fall into the realm of 11 U.S.C. § 106(a)(5), which states, "Nothing in this section shall create any substantive claim for relief or cause of action not otherwise existing under this title . . . ."

In response, the Plan Trustee points out that the same argument was made by the United States recently in *Zazzali v. United States (In re DBSI, Inc.)*, 869 F.3d 1004 (9th Cir. 2017).[6] Addressing, and denying, virtually the same argument being made here by the IRS on a similar factual scenario, the Ninth Circuit stated in a footnote to the *Zazzali* opinion that "[a]lthough the Seventh Circuit is the only other circuit to have addressed [this argument of the United States], bankruptcy courts and district courts throughout the nation nearly uniformly adopted [the statutory construction that the Ninth Circuit adopted in the case]." *Zazzali*, 869 F.3d at 1013, n.11.[7]

The Ninth Circuit has offered a simple statement in rebuttal to the argument of the IRS with respect to the claim of sovereign immunity:

> The fact that Congress waived sovereign immunity with respect to Section 544(b)(1) leaves no doubt that both Section 544(b)(1), and the derivative state law [in this case the NCVTA], provide a substantive cause of action against the government.  It would defy logic to waive sovereign immunity as to a claim which

---

[6] The IRS acknowledges that the Fourth Circuit has, like the Ninth Circuit, stated that § 106(a) abrogates sovereign immunity with respect to suits brought pursuant to § 544(b)(1). *See* AP D.E. 69 at 5 n.2 (citing *In re Abatement Envtl. Res.*, 102 Fed. Appx. 272, 274 n.2 (4th Cir. 2004)). The IRS argues this this is dicta and was decided before the Seventh and Ninth Circuit opinions quoted in this order.  The reference to the Fourth Circuit is included to show that this general issue is not a new one in this circuit.

[7] Footnote 11 in the *Zazzali* opinion includes a list of six reported opinions that agree with its position. *Zazzali* 869 F.3d at 1013 n.11.

>could not be brought against the government. In general, a government does not need immunity from a suit which cannot be brought.

*Zazzali*, 869 F.3d at 1013.

Congress would not explicitly include a waiver of sovereign immunity with respect to § 544 in § 106(a)(1) unless it also intended for immunity to be waived for claims brought under §544(b)(1), such as those in this case. Accordingly, sovereign immunity does not bar the claims of the Plan Trustee and does not provide a basis for dismissal under Rule 12(b)(6).

## II.    Tax Penalties are not Avoidable Obligations

The IRS next argues that tax penalties are not avoidable obligations within the meaning of NCVTA and § 544(b)(1). In support, it points to *In re Southeast Waffles, LLC*, 702 F.3d 850 (6th Cir. 2012), which held that payments on tax penalties could not be avoided because tax penalties themselves cannot be avoided under the Bankruptcy Code or the Tennessee Uniform Fraudulent Transfer Act. The *Southeast Waffles* court noted that it could find no case where "pre-petition tax penalties – or prepetition payments in satisfaction thereof – have ever been avoided under fraudulent transfer statutes." *Southeast Waffles,* 702 F.3d at 858. This court cannot find a case so holding since the *Southeast Waffles* opinion was issued.

"[N]oncompensatory penalties assessed and collected by the IRS do not fit neatly into the fraudulent transfer context. The purpose of allowing debtors to avoid fraudulent transfers is to discourage creditors from gaining unfair advantages as a result of a debtor's insolvency and potential bankruptcy." *Southeast Waffles*, 702 F.3d at 859. Tax penalties are a statutory consequence enacted to encourage compliance with the law and punish noncompliance. Value given or received plays no part. "It would defy common sense to find that debtors could avoid such penalties when the IRS was doing only what the tax statutes require." *Id*. A statute "requires no value to be given or exchanged . . .." *Id*.; *see also In re Haas*, 31 F.3d 1081, 1088 (11th Cir. 1994).

As to penalties, the IRS is an accidental creditor, as contract plays no part in the debt created. Rather, penalties arise by operation of statutory law due to a debtor's failure to adhere and comply.

The Plan Trustee counters by asserting that the tax penalty "obligations" at issue here provided no value to Yahweh, and therefore those obligations are fraudulent in nature. "The IRS took money [by imposing $260,000 in penalties and receiving some, but not full payment on those penalties] that should have been paid to other creditors of the Debtor" who had a higher priority under 11 U.S.C. §§ 724(a) and 726(a)(4). Response, AP D.E. 119 at 7. The Plan Trustee maintains that avoiding the statutorily imposed penalty will level the playing field for other creditors in this case who did offer and give the Debtor legally valid consideration that was not returned. By logical extension, he seeks a finding that if followed would demand the imposition of an across the board policy to avoid not just tax penalties, but by the same logic all fines and penalties imposed by any governmental authority for any bankruptcy debtor in the last four or more years.

In his attempt to persuade the court that no value was provided for the penalties incurred and payments made by the Debtor, the Plan Trustee states that no property was transferred in exchange for the tax penalties, and no antecedent debt was satisfied or secured by the levying of the penalties. However, as stated above, these tax penalties are the legitimate result of Yahweh failing to comply with a statute, which is not the same as a typical obligation fitting neatly within the context of contract and fraudulent transfer law.

While the Plan Trustee points out that fraudulent transfers, rather than fraudulent obligations, formed the underlying basis for the cause of action in *Southeast Waffles*, the fundamentally different nature of tax penalties from other obligations supports the view of the *Southeast Waffles* court. The same logic that prevents the trustee from avoiding payments already made for tax penalties supports the *Southeast Waffles* court's assertion that the penalty obligations

themselves are unavoidable. *See In re Randazzo, Inc.*, 34 B.R. 76, 78 (Bankr. N.D. Tex. 1983) ); and *Southeast Waffles*, 702 F.3d at 858 (finding "no case in which prepetition tax penalties – or prepetition payments in satisfaction . . . have been avoided under the fraudulent-transfer statutes.") Were the result to be the opposite, as the Sixth Circuit BAP put it in the initial appeal of the bankruptcy court's *Southeast Waffles* decision, the "impact of a decision to allow avoidance of noncompensatory penalties as fraudulent [obligations] would be enormous [and] could open a Pandora's box of litigation." *In re Southeast Waffles, LLC*, 460 B.R. 132, 144 (6th Cir. BAP 2011).

For the reasons stated above, the fraudulent obligations complained of here are not avoidable obligations under 11 U.S.C. § 548 as a matter of law, and any payments made thereon provided reasonably equivalent value as "a dollar-for-dollar reduction in debt constitutes - as a matter of law - reasonably equivalent value." *Southeast Waffles*, 702 F.3d at 857.[8] Therefore, the Plan Trustee has failed to state a claim upon which relief can be granted on his claims for fraudulent obligation and fraudulent transfer based on constructive fraud.[9]

## **CONCLUSION**

Based on the foregoing, the Motion is ALLOWED. All claims made in the Complaint against the United States and its agency the Department of the Treasury, Internal Revenue Service are DISMISSED for failure to state a claim upon which relief may be granted.

**END OF DOCUMENT**

---

[8] Several other bankruptcy courts have so held. *See, e.g., In re Brutsche*, 500 B.R. 62, 76 (Bankr. D. N.M. 2013) (citing *Southeast Waffles* for the proposition that a dollar-for-dollar reduction in debt constitutes reasonably equivalent value); *In re All-Type Printing, Inc.*, 274 B.R. 316, 324 (Bankr. D. Conn. 2002) (stating that a dollar-for-dollar reduction in debt is not only reasonably equivalent value, but is "perfectly equivalent value."); and *In re Central Illinois Energy Co-op.*, 521 B.R. 868, 873 (Bankr. C.D. Ill. 2014) ("a debtor's transfer of funds in satisfaction of its own debt is not constructively fraudulent.").

[9] As the fraudulent obligation claim forms the basis of the 25th Claim for Relief, objection to the claim of the IRS pursuant to 11 U.S.C. § 502(d), that claim will necessarily be dismissed as to the IRS as well. However, nothing in this order prevents the Plan Trustee from filing an objection to the claim of the IRS with an independent basis pursuant to Rule 3007 of the Federal Rules of Bankruptcy Procedure.