


**SO ORDERED.**

**SIGNED this 22 day of March, 2019.**

**Joseph N. Callaway**
**United States Bankruptcy Judge**

---

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**WILMINGTON DIVISION**

**IN RE:**

**YAHWEH CENTER, INC.,**
**Debtor**

**Case No. 16-04306-5-JNC**
**Chapter 11**

---

**RICHARD P. COOK, Plan Trustee for Yahweh Center, Inc.,**
**Plaintiff,**

**v.**

**Adv. Pro. No. 18-00082-5-JNC**

**CARLA J. ROBERTS, TONY P. ROBERTS, CHARLES A. BARTON, GLENN R. FOX, HEATHER C. MUELLER, WILLIAM S. MUELLER, MICHAEL L. RONCONE, HORACE L. HAWES, JOSEPH MICHAEL HUTSON, EDWARD C. ELMORE, III, SUNTRUST BANK, BURT & ASSOCIATES, LP, CONSILIUM STAFFING, LLC, FIRST INSURANCE FUNDING CORP., WOLF HUNTER SECURITY, WILLIS J. ADAIR, and UNITED STATES OF AMERICA,**
**Defendants**

# ORDER ALLOWING MOTION TO DISMISS FILED BY SUNTRUST BANK

The matter before the court is the motion to dismiss filed by SunTrust Bank ("SunTrust") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, made applicable to this

adversary proceeding by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure (AP D.E. 92;[1] the "Motion"). A hearing took place in Greenville, North Carolina on January 23, 2019. For the reasons that follow and as stated from the bench, the Motion will be allowed.

**BACKGROUND**

Yahweh Center, Inc. ("Yahweh") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on August 17, 2016 (the "Petition Date"). Prior to filing, Yahweh was a North Carolina nonprofit corporation operating a residential facility that provided temporary support for abused, neglected, and dependent children and adolescents. Postpetition, Yahweh immediately ceased operations and subsequently liquidated the majority of its assets. A plan was confirmed on May 26, 2017, BR D.E. 303, pursuant to which a "plan trustee" was created with all of the attendant rights, powers, and obligations of a chapter 11 debtor in possession under 11 U.S.C. § 1107(a).

Mr. Cook was named the Plan Trustee, and he filed a complaint to initiate this adversary proceeding on July 20, 2017 (AP D.E. 1; the "Complaint"). The Complaint consists of 99 pages, contains 421 paragraphs of allegations, names 17 defendants, and asserts 25 claims for relief, ranging from breach of fiduciary duty by former directors of Yahweh to avoidable transfers and preferences with respect to several prepetition creditors. With respect to SunTrust, the Complaint alleges claims for avoidance of fraudulent obligations and transfers under state and federal law (including 26 U.S.C. § 6502(a)(1) in an effort to extend the lookback period to the ten years available to the United States); recovery of avoided transfers under federal bankruptcy law; and aiding and abetting breach of fiduciary duty under North Carolina law. *See generally*, AP D.E. 1, Claims 16-22, 24.

[1] References to docket entries in this adversary proceeding will be denominated "AP D.E. __," while references to docket entries in the underlying chapter 11 case will be denominated "BR D.E. __."

SunTrust filed its motion to dismiss on October 19, 2018, contending that (1) North Carolina does not recognize a claim for aiding and abetting breach of fiduciary duty, and, if it does, the Plan Trustee failed to plead facts to support necessary elements of the claim; (2) the Plan Trustee is not authorized to bring fraudulent conveyance actions on behalf of the United States (and thus cannot take advantage of its statutory ten-year lookback period); (3) SunTrust provided reasonably equivalent value as a matter of law; and (4) the Plan Trustee failed to plead necessary elements of his fraudulent conveyance claims. The Plan Trustee filed a response on December 12, 2018, AP D.E. 129.

**FACTUAL ALLEGATIONS**

The Complaint alleges that Yahweh utilized multiple SunTrust checking accounts from May 2007 through the Petition Date, and that 99% of Yahweh's financial transactions passed through these accounts during that time. Complaint, AP D.E. 1 at ¶ 14. Further, Yahweh paid SunTrust in excess of $300,000 in fees for non-sufficient funds ("NSF"), overdrafts, late payments, and account maintenance during the same period. *Id.* The Summary of the Complaint, which is followed by 190 numbered paragraphs of factual allegations spanning 1987-2016, provides the background for the various claims, and is paraphrased here for brevity's sake as follows:

> Beginning in 2003, Yahweh failed to timely file, pay, and deposit trust fund taxes owed to the IRS and North Carolina Department of Revenue, resulting in the assessment of over $650,000 in penalties and interest and the filing of 19 different tax liens.
>
> Yahweh was undercapitalized and insolvent since at least 2006, issuing payroll and other checks with insufficient funds and resulting in NSF, overdraft, and late fees of nearly $350,000. Payroll was over 5 weeks in arrears on the Petition Date.
>
> Carla J. Roberts, the Executive Director of Yahweh, "substituted her judgment for that of the Board, and imposed her will on the Board in contravention of the decisions of the Board, and the by-laws of [Yahweh]. Instead of removing Mrs. Roberts, members of the Board continually resigned their positions until nearly no Board members remained. Despite the By-Laws calling for the contrary, Mrs.

Roberts acted as a Board member—as reflected on the year-end IRS Form 990 returns—for over a decade prior to the Petition Date."

The Directors (as defined in the Complaint) were negligent in allowing Mrs. Roberts not to pay the taxes, wages, and other obligations of Yahweh in a timely manner, in not terminating her as Executive Director, not hiring a payroll service, and failing to close Yahweh when it could no longer meet its obligations. The Board also failed to propose or approve an annual budget, failed to hold regular Board meetings, failed to maintain records of Board meetings and other actions as required by the by-laws and North Carolina law.

The Board failed to properly supervise Mrs. Roberts, allowing her to use Yahweh funds for her own benefit.

Had the directors and officers acted in good faith and exercised ordinary care, "then none of the needless penalties, interest, and overdraft fees—which exceeded $1,000,000.00—would have been incurred and paid by [Yahweh], and [Yahweh] would continue to operate today as a solvent company."

"Carla J. Roberts intentionally failed to pay the IRS the 941 withholding taxes owed by [Yahweh]. For over a decade, she continually delayed and hindered the IRS and its collection efforts through paying herself non-existent loans and an unapproved salary, paying her relatives who worked for [Yahweh], paying hundreds of thousands of dollars in NSF, and overdraft fees to SunTrust, and over $500,000 to First Insurance Funding—parties who were all well aware of [Yahweh]'s inability to timely pay its debts to the IRS."

*Id.* at ¶¶ 26-32.

More specifically with respect to SunTrust, the Complaint alleges:

Claim 16 – Avoidance of Fraudulent Obligations (10 years prior to the Petition Date): In the ten years prior to the Petition Date, SunTrust charged Yahweh $315,280.46 for NSF, overdraft, late, and maintenance fees. Yahweh did not receive reasonably equivalent value in exchange for the obligations. *Id.* at ¶ 342.

Claim 17 – Avoidance of Fraudulent Transfers (10 years prior to the Petition Date): Because the obligations are avoidable, Yahweh's payments to SunTrust in the amount of $315,280.46 were made without receiving reasonably equivalent value. *Id.* at ¶ 353.

Claim 18 – Avoidance of Fraudulent Transfers (10 years prior to the Petition Date): Yahweh made payments to SunTrust in the amount of $315,280.46 with the intent to hinder, delay, and defraud the IRS. "SunTrust was aware that [Yahweh]'s obligations to the IRS were being evaded by [Yahweh] as it was in physical possession of [Yahweh]'s bank accounts and was able to observe all of the financial

transactions of [Yahweh] through those accounts, including payment (and non-payment) of the obligations to the IRS." *Id.* at ¶ 367. Further, SunTrust was also in constant contact with Mrs. Roberts about the financial affairs of [Yahweh], and knew, or should have known, of the nineteen (19) tax liens that were filed by the IRS against [Yahweh], and the two (2) Trust Fund Recovery Penalty liens that were filed against Mrs. Roberts." In addition, the publicly available Form 990s of Yahweh contained balance sheets and profit and loss statements reflecting Yahweh's issues with the IRS. *Id.* at ¶ 368.

Claim 19 – Avoidance of Fraudulent Obligations (6 years prior to the Petition Date): In the six years prior to the Petition Date, SunTrust charged Yahweh $239,317.32 for NSF, overdraft, late, and maintenance fees. Yahweh did not receive reasonably equivalent value in exchange for the obligations. *Id.* at ¶¶ 375-79.

Claim 20 – Avoidance of Fraudulent Transfers (6 years prior to the Petition Date): Because the obligations are avoidable, Yahweh did not receive reasonably equivalent value for the payments on the obligations. *Id.* at ¶ 383.

Claim 21 – Avoidance of Fraudulent Transfers (6 years prior to the Petition Date): Yahweh made payments to SunTrust in the amount of $239,317.32 with the intent to hinder, delay, and defraud the IRS. SunTrust's knowledge is realleged as set forth above in Claim 18. *Id.* at ¶¶ 396-97.

Claim 22 – Recovery of Avoided Transfers: As the initial transferee of avoidable transfers made to SunTrust for the benefit of SunTrust, the Plan Trustee is entitled to a judgment against SunTrust in the amount of $315,280.46. *Id.* at ¶¶ 402, 408.

Claim 24 – Aiding and Abetting Breach of Fiduciary Duty: The Directors of Yahweh owed fiduciary obligations to Yahweh that they breached by continually failing to:

(a) timely file, deposit, and pay withholding taxes owed to the IRS and NC DOR;

(b) employ a payroll service to ensure the timely filing, depositing, and payment of withholding taxes owed to the IRS and NC DOR, as recommended by several employed professionals;

(c) ensure sufficient funds existed in the bank accounts of Yahweh prior to the issuance of checks from those accounts;

(d) close Yahweh when it became insolvent and unable to pays its obligations as they came due;

(e) terminate the employment of the Executive Director, Carla J. Roberts;

(f) hold meetings as required in the By-Laws;

(g) maintain and preserve permanent records of the actions and meetings of the Board as required by N.C. Gen. Stat. § 55A-16-01(a) and the By-Laws;

(h) provide budgeting guidance and approve an annual budget as required in the By-Laws;

> (i) supervise, evaluate, and set the salary of Carla J. Roberts as required in the By-Laws;
> (j) evaluate the program and policies of the Yahweh at least annually for effectiveness and needed change;
> (k) stop Carla J. Roberts from borrowing in excess of $600,000 from Yahweh;
> (l) heed the advice of Yahweh's attorneys; and,
> (m) timely pay employees for their earned weekly wages the immediately following pay period.
>
> SunTrust was aware of the breaches for the reasons set forth above in the summary of Claim 18. Further, "SunTrust helped the Directors breach their fiduciary duties to [Yahweh] by taking over $315,000 from [Yahweh] for no consideration. This was money that could have been paid to the IRS, to the employees of [Yahweh], or other obligations of [Yahweh] for which it actually received consideration."

*Id.* at ¶¶ 413-17.

SunTrust seeks dismissal of all of the claims asserted against it as insufficiently pled and unsupported by law.

**DISCUSSION**

**A. The Standard for Dismissal Pursuant to Rule 12(b)(6).**

Rule 8(a)(2) of the Federal Rules of Civil Procedure provides that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." If a complaint fails to meet this threshold obligation, the action should be dismissed under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). For purposes of Rule 12(b)(6), all allegations of fact contained in a complaint must be accepted as true. *E.I. du Pont de Nemours &Co. v. Kolon Indus., Inc.,* 637 F.3d 435, 440 (4th Cir. 2011).

In *Bell Atlantic Corp. v. Twombly*, the Supreme Court of the United States held that a complaint must include "enough facts to state a claim to relief that is plausible on its face." 550 U.S. 544, 570 (2007). The Court elaborated in *Ashcroft v. Iqbal* that "the tenet that a court must

accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and that "only a complaint that states a plausible claim for relief survives a motion to dismiss." 129 S. Ct. 1937, 1949 (2009); *see also Adcockv. Freightliner, LLC*, 550 F.3d 369, 374 (4th Cir. 2008) (mere legal conclusions do not warrant automatic assumption of truth by the court). The allegations must be more than a "formulaic recitation of the elements" of a claim. *Iqbal*, 129 S. Ct. at 1951.

A claim has facial plausibility when the plaintiff pleads enough "factual content to allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 554 (4th Cir. 2013). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949. Thus, dismissal under Rule 12(b)(6) is proper when, from the face of the complaint, it is clear that the plaintiff's claims are not supported by law, that one or more facts necessary to assert a valid claim have not been pled, or that facts exist that necessarily defeat the plaintiff's claims.

**B. Avoidance of Fraudulent Obligations and Fraudulent Transfers**

Claims 16 through 22 reflect the Plan Trustee's effort to avoid fees charged and collected by SunTrust as fraudulent obligations and transfers. He seeks to avoid those obligations and transfers for the ten years prior to the Petition Date through the use of 11 U.S.C. § 544(b)(1), which allows a trustee to avoid any transfer or obligation "that is voidable under applicable law by a creditor holding an unsecured claim," combined with 26 U.S.C. § 6502(a)(1),[2] providing the IRS with ten years from assessment to file a proceeding to collect employment taxes. He similarly

[2] The Complaint references 26 U.S.C. § 6901(a)(1)(A)(i); however, the Plan Trustee indicated in his response to the Motion to Dismiss and at oral argument that he cited the incorrect statute. Section 6502 addresses employment taxes, while § 6901 addresses income taxes.

relies upon the six-year statute of limitations for avoidance of fraudulent transfers found in the Federal Debt Collections Procedures Act, 28 U.S.C. §§ 3304(b)(1)(a), 3306(a)(1). SunTrust maintains that the Plan Trustee may not step into the shoes of the IRS, and instead is limited to recovery under North Carolina law (with a four-year statute of limitations) and the Bankruptcy Code (with a two-year statute of limitations). The IRS agrees with SunTrust on this point, while at least some case law supports the Plan Trustee. *See, e.g.*, *Vieira v Gaither (In re Gaither)*, 595 B.R. 201 (Bankr. D.S.C. 2018). While the court may have to decide whether the Plan Trustee can utilize the federal limitations periods available to the IRS in consideration of claims against other defendants, it is not necessary to make that determination with respect to SunTrust because the claims fail for other reasons.

**1. Reasonably Equivalent Value**

While the Plan Trustee seeks to proceed under several different statutes that allow a party to avoid transfers under varying circumstances, the language of those statutes tracks closely to the language of § 548 of the Bankruptcy Code. The Plan Trustee attempts to avoid the bank obligations under two theories: actual fraud, and constructive fraud. With respect to constructive fraud, the statute provides, in relevant part:

> (a)(1) The trustee may avoid any transfer . . . or any obligation . . . incurred by the debtor . . . if the debtor voluntarily or involuntarily –
>
> * * *
>
> (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
>
> (ii) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation . . . [.]

11 U.S.C. § 548(a)(1)(B).

The factual allegations in the Complaint may be summarized as:

> (1) In the ten years prior to the Petition Date, SunTrust charged Yahweh $315,280.46 for NSF, overdraft, late, and maintenance fees. Yahweh did not receive reasonably equivalent value in exchange for the obligations.
>
> (2) Because the obligations are avoidable, Yahweh's payments to SunTrust in the amount of $315,280.46 were made without receiving reasonably equivalent value.

Complaint, AP D.E. 1 at ¶ 342, 353. In addition, there is an exhibit to the Complaint that lists various fees charged by SunTrust from May 3, 2007 through July 28, 2016. Complaint Ex. U, AP D.E. 1 at 247-284. The exhibit appears to provide the date, the type of fee (*e.g.*, NSF, maintenance, overdraft, stop payment), the applicable account (*e.g.*, operating, payroll, etc.), and the amount of the fee.

The Complaint provides no factual allegations to explain why Yahweh did not receive reasonably equivalent value for the various fees. There is no allegation that any fee was not consistent with the contractual relationship or that any fee was improper, unreasonable, or did not compensate SunTrust for a service provided to Yahweh in connection with the accounts. Further, there is no allegation as to whether a particular fee covered a check for which there were insufficient funds (or not). There is no copy of any account agreement. There is simply no information other than that the fees were charged, with a conclusory allegation that the debtor did not receive reasonably equivalent value for the fees.

As noted by Judge Leonard in *Angell v. Ber Care, Inc. (In re Caremerica, Inc.)*, 409 B.R. 737, 756 (Bankr. E.D.N.C. 2010), "[u]nder *Iqbal*, . . . claims to avoid constructively fraudulent transfers must assert factual allegations which show that relief is plausible." In that case, the complaint alleged that the transferors were insolvent on the date of the relevant transfers and that the transferors "received less than reasonably equivalent value in exchange from the defendant for

such fraudulent transfer," allegations that "mirror the elements of § 548(a)(1)(B)." *Id.* The court went on to find that

> the trustee fails to support such allegations with factual assertions other than dates, amounts, and names of transferees included in Exhibit B. Missing from the Amended Complaint is an identification of the consideration received by each transferor, information as to why the value of such consideration was less than the amount transferred, and facts supporting the debtors' insolvency at the time of the transfer. In the absence of such factual assertions, the trustee's claims based on constructive fraud fail to meet the Rule 8 pleading standard.

*Id.*

The same is true here. The Complaint simply includes conclusory allegations mirroring the elements of a constructively fraudulent transfer, without sufficient detail to state a plausible claim that the debtor did not receive reasonably equivalent value for the bank fee obligations. Further, the Plan Trustee failed to cite any cases supporting his conclusion that ordinary bank fees are not supported by reasonably equivalent value.[3]

The Plan Trustee asserts that the payment of the various fees is avoidable because the underlying obligation is avoidable for lack of reasonably equivalent value. Because the Complaint fails to allege facts that would establish the avoidability of the obligations, the Complaint similarly fails to allege facts to support the avoidance of the payments.

Because the Complaint fails to provide any factual support for the constructively fraudulent transfer claims, Claims 16, 17, 19, and 20 will be dismissed as to SunTrust for failure to state a claim upon which relief may be granted.

---

[3] The Plan Trustee did submit a Supplement to his Response, AP D.E. 184, that attached an article arguing against the enforcement of contractual penalty clauses in consumer bank agreements, Chi Wu, *Restoring the Wisdom of the Common Law: Applying the Historical Rule Against Contractual Penalty Damages to Bank Overdraft Fees*, National Consumer Law Center (April 2013). However, this is not a consumer bank account, and in a state with no limit on interest that can be charged for commercial loans, it seems unlikely that North Carolina would be inclined to limit routine bank fees for commercial accounts.

**2. Actual Fraud**

With respect to actual fraud, § 548 provides, in relevant part:

> (a)(1) The trustee may avoid any transfer . . . or any obligation . . . incurred by the debtor . . . if the debtor voluntarily or involuntarily –
>
> (A) made such transfer or incurred such obligation with the actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted . . . [.]

11 U.S.C. § 548(a)(1)(A).

The factual allegations with respect to this claim may be summarized as follows:

> Yahweh made payments to SunTrust in the amount of $315,280.46 with the intent to hinder, delay, and defraud the IRS. "SunTrust was aware that [Yahweh]'s obligations to the IRS were being evaded by [Yahweh] as it was in physical possession of [Yahweh]'s bank accounts and was able to observe all of the financial transactions of [Yahweh] through those accounts, including payment (and non-payment) of the obligations to the IRS." Further, SunTrust was also in constant contact with Mrs. Roberts about the financial affairs of [Yahweh], and knew, or should have known, of the nineteen (19) tax liens that were filed by the IRS against [Yahweh], and the two (2) Trust Fund Recovery Penalty liens that were filed against Mrs. Roberts." In addition, the publicly available Form 990s of Yahweh contained balance sheets and profit and loss statements reflecting Yahweh's issues with the IRS.

Complaint, AP D.E. 1 at ¶¶ 367-68.

"A claim alleging an actual fraudulent transfer under § 548 must satisfy the particularity requirement of Rule 9(b)." *Ber Care*, 409 B.R. at 755 (citing *In re Derivium Capital, LLC,* 380 B.R. 429, 439 (Bankr. D.S.C. 2006) (citing *In re Verestar, Inc.*, 343 B.R. 444, 459 (Bankr. S.D.N.Y. 2006))). Here, the allegation that Yahweh made the payments with the intent to hinder, delay, or defraud the IRS are conclusory. There are no specific facts alleged that could support an ultimate finding that Yahweh paid the fees charged by SunTrust *for the purpose of* preventing the IRS from collecting the taxes and penalties owed to it. Simply failing to pay a creditor does not establish intent to hinder, delay, or defraud, nor does paying one creditor instead of another without

a more detailed showing.[4] There is a reason that "badges of fraud" have used been used to establish that transfers of property were made with intent to hinder, delay or defraud nearly since the beginning of time. *See Twyne's Case*, 3 Coke 806, 76 Eng. Rep. 809 (Star Chamber, 1601).

As described in North Carolina's Voidable Transfer Act, intent may be determined by considering whether:

> (1) The transfer or obligation was to an insider;
> (2) The debtor retained possession or control of the property transferred after the transfer;
> (3) The transfer or obligation was disclosed or concealed;
> (4) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
> (5) The transfer was of substantially all the debtor's assets;
> (6) The debtor absconded;
> (7) The debtor removed or concealed assets;
> (8) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
> (9) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
> (10) The transfer occurred shortly before or shortly after a substantial debt was incurred;
> (11) The debtor transferred the essential assets of the business to a lienor that transferred the assets to an insider of the debtor;
> (12) The debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor reasonably should have believed that the debtor would incur debts beyond the debtor's ability to pay as they became due; and
> (13) The debtor transferred the assets in the course of legitimate estate or tax planning.

N.C. Gen. Stat. § 39-23.4(b).

The recognized "badges of fraud" demonstrate that the statute seeks to avoid transfers made in an attempt to hide or make unavailable assets that a creditor otherwise would be able to pursue in collection of its debt. As noted by SunTrust, the Complaint contains no allegations that would establish any badges of fraud. The only allegations are that Yahweh intended to hinder, delay, or

[4] Indeed, if this was all that was required, every payment made by Yahweh during this time would be an avoidable transfer, including payments to Yahweh's employees.

defraud the IRS, that it intentionally failed to pay the IRS, that it paid fees to SunTrust, that Yahweh was insolvent at the time of the transfers (which itself may not have been sufficiently alleged for the entire period at issue), and that Yahweh did not receive reasonably equivalent value. The remaining allegations, which themselves do not contain sufficient facts, seek to show that SunTrust should have known that Yahweh was evading the IRS. SunTrust's knowledge, while possibly relevant to a defense, does not advance the ball on the affirmative showing necessary with respect to the debtor's intent.

Because the Complaint fails to allege facts that could establish that Yahweh paid the bank fees to SunTrust with the intent to hinder, delay, or defraud the IRS, Claims 18 and 21 will be dismissed for failure to state a claim upon which relief may be granted. Further, because Claim 22 seeks to recover transfers the Plan Trustee sought to avoid in Claims 16-21, Claim 22 will also be dismissed as to SunTrust.

**C. Aiding and Abetting Breach of Fiduciary Duty**

The Complaint alleges that the directors of Yahweh breached their fiduciary duty to Yahweh in a myriad of ways, including failing to pay employment and withholding taxes, failing to pay employees, failing to supervise Mrs. Roberts, failing to ensure sufficient funds were in Yahweh's bank accounts to cover checks, and failing to close Yahweh when it became insolvent. The Complaint further alleges that SunTrust was aware of these breaches of fiduciary duty because it was able to monitor Yahweh's bank accounts and what payments were and were not being made, and that it was aware of the 19 tax liens against Yahweh's property and could have accessed financial information on the filed Form 990s. Finally, "SunTrust helped the Directors breach their fiduciary duties to [Yahweh] by taking over $315,000 from [Yahweh] for no consideration. This was money that could have been paid to the IRS, to the employees of [Yahweh], or other

obligations of [Yahweh] for which it actually received consideration." Complaint, AP D.E. 1 at ¶¶ 413-17.

SunTrust contends that this claim should be dismissed for two reasons: first, North Carolina does not recognize a claim for aiding and abetting a breach of fiduciary duty, and second, even if such a claim exists, the Plan Trustee has not alleged sufficient facts to establish the elements of the claim. In support of its first argument, SunTrust explains that the cause of action was previously recognized in *Blow v. Shaughnessy*, 88 N.C. App. 484, 364 S.E.2d 444 (1988), but the federal law on which *Blow* was premised was repealed or overturned such that *Blow* is no longer valid.

Indeed, after this matter was briefed, and a few days prior to the hearing on the Motion, the North Carolina Court of Appeals issued an unpublished opinion in *Veer Right Mgmt. Group, Inc. v. Czarnowski Display Service, Inc.*, No. COA 18-420, 2019 WL 190310 (N.C. App. Jan 15, 2019), in which the court considered whether summary judgment was properly allowed with respect to a claim for aiding and abetting breach of fiduciary duty. The court noted only that North Carolina had previously recognized a cause of action for aiding and abetting breach of fiduciary duty in the context of securities law violations, citing *Blow*, but "the underlying rationale of *Blow* was abrogated . . . ." 2019 WL 190310, at *6-7.

The *Veer Right* court declined to take a position on whether the cause of action remains a viable one in North Carolina, instead holding that even if it is recognized, the plaintiff in that case failed to demonstrate a disputed issue of material fact supporting the claim. *Id.* at *7. In considering the claim, however, the court did rely on the elements recited in *Blow*:

> (1) the existence of a [breach of fiduciary duty] by the primary party[;]
> (2) knowledge of the [breach] on the part of the aider and abettor; and
> (3) substantial assistance by the aider and abettor in the achievement of the primary [breach].

*Id.* (citing *Blow*, 88 N.C. App. at 490, 364 S.E.2d at 447).

This court, likewise, need not determine whether aiding and abetting a breach of fiduciary duty is a recognized cause of action in North Carolina, because the Plan Trustee has failed to plead facts sufficient to establish the three elements of the claim. In his Response, the Plan Trustee cites to paragraphs 415-417 of the Complaint, which are summarized above.[5] The Plan Trustee does not explain how those factual allegations establish the elements.

Assuming without finding that the Complaint establishes that one or more directors breached a fiduciary duty to Yahweh, the Complaint does not establish knowledge of such breach on the part of SunTrust or substantial assistance with the breach. In essence, the Complaint alleges that the directors failed to properly manage Yahweh by, *e.g.*, not paying taxes, not supervising Mrs. Roberts, not holding regular meetings, and not following the by-laws. The only allegation that SunTrust was aware of these failures is that SunTrust could observe what transactions were going through Yahweh's bank accounts; that it was aware of the fees it was charging for NSF, overdrafts, and late fees; and that it was aware or should have been aware of the numerous tax liens against Yahweh and Mrs. Roberts.

The "knowledge" element requires actual, not constructive, knowledge. *Ivey v Crown Memorial Park, LLC (In re Lee Memory Gardens, Inc.)*, 333 B.R. 76, 80 (Bankr. M.D.N.C. 2005). It also requires "a degree of scienter." *Zloop, Inc. v. Parker Poe Adams & Bernstein, LLP*, 17 CVS 5480, 2018 WL 943954, at *14 (N.C. Bus. Ct. Feb. 16, 2018). There are no allegations of any way that SunTrust could have had direct knowledge of the alleged breaches of fiduciary duty other than that it had possession of the Yahweh bank accounts and could observe Yahweh's obvious financial difficulties based on the account transactions, and that it had contact with Mrs. Roberts. As noted

[5] The Plan Trustee also sets forth additional allegations in his Response that he would add to the Complaint if given an opportunity to amend. Response, AP D.E. 129 at 2. He maintains that those allegations would demonstrate that SunTrust "was absolutely aware of the horrendous financial condition of the Yahweh Center and they aided this demise by taking over $315,000 . . . for no consideration." *Id.* at 4-5.

by SunTrust, the majority of the cited breaches involve internal corporate matters, such as the failure to hold meetings, maintain minutes, or supervise Mrs. Roberts.

The Complaint fails to allege that SunTrust has a duty to know information that is publicly available, such as what tax liens exist or what was included in Yahweh's Form 990s, nor is there an allegation that it *did* know that information. The Complaint alleges that SunTrust had "contact" with Mrs. Roberts through which it should have known of the various tax liens and that Mrs. Roberts had personal liability for the unpaid taxes, but there is no specific allegation of any conversation that Mrs. Roberts had where she might have disclosed the various liens. In short, the Complaint fails to allege sufficient facts to demonstrate actual knowledge of the alleged breaches of fiduciary duty.

There are also no allegations that SunTrust intended to assist the directors with their alleged breaches of fiduciary duty, which would be necessary to establish scienter and the necessary "same level of culpability" of the aider and abettor to the original tortfeasor. *See Tong v. Dunn*, No. 11 CVS 1522, 2012 NCBC LEXIS 16, at *26 (N.C. Super. Ct. Mar. 19, 2010). The Complaint fails to allege what acts SunTrust should have taken given its alleged knowledge of the status of Yahweh's bank accounts.

With respect to the third element, "[t]he Supreme Court of North Carolina has explained 'substantial assistance' in the context of negligence of joint tortfeasors, stating substantial assistance exists '[i]f the encouragement or assistance is a substantial factor in causing the resulting tort, the one giving it is himself a tortfeasor[.]'" *Veer Right*, 2019 WL 190310, at *7 (citing *Boykin v. Bennett*, 253 N.C. 725, 730, 118 S.E.2d 12, 16 (1961) (quoting Restatement, 4 Torts § 876(b), cmt. b)). In *Veer Right*, the statement that the defendant "helped in an indirect way" was insufficient to create an issue of fact on this element. *Id.*

> [F]actors courts may consider in determining whether a party's assistance rises to the level of "substantial assistance," including: the nature of the act encouraged, the amount of assistance given by the defendant, the defendant's presence or absence at the time of the tort, his relation to the primary tortfeasor, and the defendant's state of mind. Restatement (Second) of Torts § 876(b), cmt.d (Am. Law Inst. 1979)[.]

*Zloop*, 2018 WL 943954, at *15.

Here, the "substantial assistance" the Plan Trustee alleges is that SunTrust "helped the Directors breach their fiduciary duties to [Yahweh] by taking over $315,000 from [Yahweh] for no consideration," Complaint, AP D.E. 1 at ¶ 417; in essence, SunTrust gave the directors an alternative place to spend Yahweh's money in the form of fees collected for NSF, overdrafts, and late fees. This is simply not enough. "As one court recognized, . . . 'substantial assistance means something more than the provision of routine professional services.'" *Zloop*, 2018 WL 943954, at *15 (citing *Abrams v. McGuireWoods LLP*, 518 B.R. 491, 503 (N.D. Ind. 2014)).

While the charging of fees may have contributed to Yahweh's financial difficulties, this is not the same as enabling the breach of fiduciary duty for which the Plan Trustee seeks to recover. The Complaint fails to allege anything SunTrust did or did not do that could support a claim for aiding and abetting breach of fiduciary duties. SunTrust's only act was to charge and collect contractual fees that no one disputes were owed, and that simply cannot support the claims asserted in the Complaint against SunTrust. Accordingly, Claim 24 is dismissed for failure to state a claim upon which relief may be granted.

**CONCLUSION**

Based on the foregoing, the Complaint is DISMISSED with respect to SunTrust for failure to state a claim upon which relief may be granted.

**END OF DOCUMENT**