**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 20-1685

In re: YAHWEH CENTER, INC.,

    Debtor.

------------------------------

RICHARD P. COOK, Plan Trustee for Yahweh Center, Inc.,

    Plaintiff - Appellant,

    v.

UNITED STATES OF AMERICA,

    Defendant - Appellee.

Appeal from the United States District Court for the Eastern District of North Carolina, at Wilmington. Richard E. Myers, II, Chief District Judge. (7:19-cv-00077-M)

Argued: December 8, 2021      Decided: March 8, 2022

Before AGEE, THACKER, and QUATTLEBAUM, Circuit Judges.

Affirmed by published opinion. Judge Quattlebaum wrote the opinion, in which Judge Agee and Judge Thacker joined.

**ARGUED:** Richard Preston Cook, RICHARD P. COOK, PLLC, Wilmington, North Carolina, for Appellant. Rachel Ida Wollitzer, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Richard E. Zuckerman, Principal

Deputy Assistant Attorney General, Ellen Page DelSole, Tax Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Robert J. Higdon, Jr., United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

―――――――――

QUATTLEBAUM, Circuit Judge:

The Bankruptcy Code and the related state fraudulent transfer laws permit a bankruptcy trustee to void a transaction and reclaim any property transferred where a debtor incurred an obligation or transferred property for less than "reasonably equivalent value" of the obligation or property. *See* 11 U.S.C. §§ 544(b)(1), 548(a)(1)(B); N.C. Gen. Stat. § 39-23.5(a). Seeking to invoke those provisions here, the trustee sued the United States to void tax penalty obligations owed by the debtor to the IRS and to recover prior payments made by the debtor to the IRS upon such obligations. After the district court affirmed the bankruptcy court's dismissal of these claims, the trustee appealed. We conclude that under the Bankruptcy Code and the applicable state fraudulent transfer statutes, tax penalty obligations are not voidable, and relatedly, tax penalty payments are not recoverable. Thus, we affirm.

I.

Yahweh Center, Inc. is a non-profit corporation, the general purpose of the organization being to provide residential support services to at-risk children. In 2016, Yahweh Center petitioned for bankruptcy under Chapter 11 of the Bankruptcy Code. At the time of the filing, claims against Yahweh Center included certain tax obligations—as early as 2003, Yahweh Center failed to pay certain taxes owed to the IRS and the North Carolina Department of Revenue. The IRS assessed the unpaid taxes, penalties, and interest, and eventually filed tax liens to secure them. While the Yahweh Center had paid some of these tax obligations, an outstanding balance remains for which the IRS filed a

3

proof of claim. According to the IRS's proof of claim, Yahweh Center owes secured claims, unsecured priority claims and unsecured general claims.

The bankruptcy court confirmed Yahweh Center's Chapter 11 plan of reorganization. Pursuant to the plan, the court appointed Richard P. Cook as the plan trustee. As the plan trustee, Cook sued the United States to avoid tax penalties incurred by Yahweh Center and to recover tax penalty payments that the organization already paid. He alleged that these penalties and penalty payments were constructively fraudulent obligations and fraudulent transfers because Yahweh Center did not receive "reasonably equivalent value" in exchange for the penalties and penalty payments.[1]

The bankruptcy court granted the government's motion to dismiss. It first rejected the government's argument that sovereign immunity principles bar Cook's lawsuit. Instead, it ruled that Cook's theory of constructive fraud is inapplicable in the context of tax penalty obligations and payments thereof. After Cook appealed the bankruptcy court's order to the district court, the district court affirmed the order for similar reasons as those of the bankruptcy court. Cook appealed the district court's judgment. We have jurisdiction to hear the case under 28 U.S.C. §§ 158(d)(1), 1291.

---

[1] "Constructive" fraudulent transfers and obligations differ from "actual" fraudulent transfers and obligations in that the actual intent to defraud the creditor is no longer at issue. Thus, unlike with an actual fraud claim, we focus on whether the debtor was truly adequately compensated for the transfer of property or the obligation incurred, i.e., receiving reasonably equivalent value. *See generally* Elizabeth Warren, Fed. Jud. Ctr., *Business Bankruptcy* 108–09 (1993).

II.

Cook's appeal requires us to answer whether sovereign immunity principles prevent bankruptcy trustees from seeking to avoid a debtor's tax penalty obligations and recover payments previously made on such penalties, and, if sovereign immunity does not apply, whether such claims fall under the Bankruptcy Code and the applicable fraudulent transfer statutes.[2] Before addressing those questions, however, we begin with a general overview of the law related to fraudulent conveyance avoidance claims.

A.

Under § 544 of the Bankruptcy Code, generally a Chapter 11 bankruptcy trustee "may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim." 11 U.S.C. § 544(b)(1). "Avoiding" a transfer of property or an obligation makes the transfer or obligation null and void. In other words, whatever property the debtor transferred is returned to the debtor and any obligation the debtor incurred goes away. If a transfer or an obligation is avoided, it is as if neither ever happened.

---

[2] Because we review the judgment of the district court sitting in review of a bankruptcy court, we apply the same standard of review that the district court applied. *Copley v. United States*, 959 F.3d 118, 121 (4th Cir. 2020). Since the bankruptcy court granted the government's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) and the district court applied the same Rule 12(b)(6) legal standard, we do so here too. Accordingly, we "'must accept as true all of the factual allegations contained in the complaint,' drawing 'all reasonable inferences' in the non-moving party's favor." *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)), *as amended* (Jan. 20, 2017). At the same time, we need not "assume the veracity of the legal conclusions drawn from the facts alleged." *Id.*

5

But for a transfer or obligation to be "avoided," it must be "voidable under applicable law by a creditor holding an unsecured claim." *Id*. That means § 544(b)(1) itself does not provide a substantive cause of action. Instead, it provides a procedural vehicle for such action if, but only if, an "applicable law" allows an unsecured creditor to void a transfer or obligation.

In this case, the alleged applicable law is the North Carolina Uniform Voidable Transactions Act (the "Act"). That Act provides that debt obligations are voidable "if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation."[3] N.C. Gen. Stat. § 39-23.5(a). Breaking down this language, an unsecured creditor must show that when the debtor incurred an obligation or transferred certain property, the debtor did not receive "reasonably equivalent value."

The phrase "without receiving a reasonably equivalent value" is not defined in the Act, but it generally means a debtor received nothing in return or at least nothing close to the value of the property transferred or the obligation incurred. *See generally* 5 Alan N. Resnick & Henry J. Sommer, *Collier on Bankruptcy* ¶ 548.05[1] (16th ed. 2021). In such a situation, the unsecured creditors are harmed. This is because, in the case of a property

---

[3] The Act is similar to the corresponding federal code, which permits avoiding debt obligations that "received less than a reasonably equivalent value in exchange for such transfer or obligation." 11 U.S.C. § 548(a)(1)(B)(i). The major difference is the statute of limitations on how far back the avoidance action can reach. *Compare* 11 U.S.C. § 548(a)(1) (two years), *with* N.C. Gen. Stat. § 39-23.9(2) (four years).

transfer, the transfer leaves fewer assets to repay the unsecured creditors without the debtor receiving anything of corresponding value. If the unsecured debts remain the same and the assets decrease, the unsecured creditors will receive less money. And in the case of an obligation incurred, the debtor creates additional debt to which the debtor's limited assets must be allocated without anything of value being obtained in return for the obligation. In other words, the obligation dilutes the amount the unsecured creditors will receive. To provide a remedy for these harms, § 39-23.5(a) of the Act allows an unsecured creditor to sue the entity who received such transfer of property or to whom such an obligation is owed, the entity typically being referred to as "transferee."

Since the Act allows an unsecured creditor to bring such claims, § 544(b)(1) kicks in. This provision allows the bankruptcy trustee to, in essence, "step into that unsecured creditor's shoes" to do the same thing the creditor could do. Under the Bankruptcy Code, the trustee acts for the benefit of all unsecured creditors.[4] Consistent with that duty, the Code permits the trustee to take the same action an individual unsecured creditor would have been able to take.

And this right to avoid transfers and obligations is important. In the bankruptcy context, the debtor is almost always unable to fully repay unsecured creditors. After all, debtors that can fully repay their debts generally do not file for bankruptcy in the first place.

---

[4] To be precise, the trustee acts for the benefit of the bankruptcy estate, which in turn benefits the unsecured creditors. *See* Warren, *supra* note 1, at 26 (discussing how "[t]he trustee administers the bankruptcy estate, primarily for the purposes of liquidating its assets and distributing the proceeds to the creditors," and how the trustee may perform other services, generally "on behalf of the creditors collectively," such as "pursu[ing] certain actions to enhance the value of the estate").

But since unsecured creditors typically are not fully repaid, they benefit if property previously transferred is returned to the bankruptcy estate because that means the debtor's assets increase. If the debtor's assets increase, there are more assets to repay unsecured creditors. Likewise, unsecured creditors benefit if an obligation goes away. If any obligation goes away, the number of claims on the debtor's assets decreases which again means unsecured creditors will receive more money.

Here, Cook alleges Yahweh Center received nothing of "reasonably equivalent value" in return for the tax penalty obligations assessed by the government or from Yahweh Center's payments on the tax penalty obligations. Accordingly, he seeks to nullify tax penalties and recover payments already made so that the harm done to Yahweh Center's unsecured creditors by those transactions will be undone.

B.

We first consider the government's argument that Cook's claim should be dismissed based on sovereign immunity principles. According to the government, Cook failed to present an "applicable law" that an unsecured creditor could rely on to void a fraudulent transfer or obligation against the United States in a § 544(b)(1) lawsuit. This is because, under the government's theory, an unsecured creditor could not void a transfer or obligation against the United States by applying the Act—sovereign immunity would bar such a claim.

The Bankruptcy Code, however, forecloses the government's position that sovereign immunity bars any action by an unsecured creditor under the Act. Section 106(a) of the Bankruptcy Code provides that "sovereign immunity is abrogated as to a

8

governmental unit to the extent set forth in this section." Subsection (a)(1) then lists several provisions under the Bankruptcy Code, including § 544, the avoidance statute invoked by Cook. Then, subsection (a)(2) provides that "[t]he court may hear and determine any issue arising with respect to the application of such sections to governmental units." 11 U.S.C. § 106(a)(2). "[S]uch sections" includes § 544. *See id.* § 106(a)(1), (2). And § 39-23.5 of the Act would fall under "any issue arising with respect to" applying § 544 against the United States. *See id.* § 106(a)(2).

In addition, under subsection (b), once the government filed a proof of claim it has "waived sovereign immunity with respect to a claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which the claim of such governmental unit arose." *Id.* § 106(b); *see also Gardner v. New Jersey*, 329 U.S. 565, 573–74 (1947) ("It is traditional bankruptcy law that he who invokes the aid of the bankruptcy court . . . must abide the consequences . . . . When the State becomes the actor and files a claim against the fund it waives any immunity which it otherwise might have had respecting the adjudication of the claim."). Here, the IRS indeed filed a proof of claim over Yahweh Center's property. In turn, the government would have waived sovereign immunity if an unsecured creditor were to file a claim against it.[5]

---

[5] We recognize that other circuits that have addressed this issue, specifically the Seventh and Ninth Circuits, are split. *Compare In re Equip. Acquisition Res., Inc.*, 742 F.3d 743 (7th Cir. 2014) (supporting the government's position), *with In re DBSI, Inc.*, 869 F.3d 1004 (9th Cir. 2017) (supporting Cook's position). As demonstrated in our discussion above, we generally agree with the Ninth Circuit's conclusion, although our reasoning is slightly different.

C.

We now turn to the merits of Cook's argument that Yahweh Center's tax penalties and tax penalty payments should be voided. Our Circuit has yet to address this issue. But in *In re Southeast Waffles, LLC*, 702 F.3d 850 (6th Cir. 2012), the Sixth Circuit rejected the same arguments Cook advances here. There, the bankruptcy trustee sought to recover the debtor's earlier payments on its tax penalty obligations and to avoid the unpaid tax penalty obligations under 11 U.S.C. § 548(a)(1)(B), which is the Bankruptcy Code's fraudulent transfer provision, and the Tennessee Uniform Fraudulent Transfer Act, which resembles North Carolina's statute.[6]

*Southeast Waffles* held that tax penalty obligations were not avoidable under the Bankruptcy Code or the Tennessee fraudulent transfer statute. It noted that both statutes required an "exchange" for the obligation. *Id*. at 858. The court agreed with the bankruptcy court's conclusion that a "noncompensatory tax penalty that is statutorily required and properly imposed" was not "within the ambit of the 'exchanges' targeted in the fraudulent-transfer laws." *See id.* at 858–59. The Sixth Circuit reasoned that "noncompensatory penalties assessed and collected by the IRS do not fit neatly into the fraudulent transfer

---

[6] Like our discussion *supra* note 3, the North Carolina and Tennessee statutes are similar to 11 U.S.C. § 548(a)(1)(B)(i), the corresponding federal code, which permits avoiding debt obligations that "received less than a reasonably equivalent value in exchange for such transfer or obligation." All three statutes allow a creditor to avoid transfers of property and obligations incurred where reasonably equivalent value is not received. In fact, the North Carolina and the Tennessee statutes are based on the Uniform Fraudulent Transfer Act developed by the Uniform Law Commission. *See* 2003 Tenn. Pub. Acts 76 ("AN ACT to enact the Uniform Fraudulent Transfer Act"); 1997 N.C. Sess. Laws 689 ("AN ACT TO . . . ADOPT THE UNIFORM FRAUDULENT TRANSFER ACT").

10

context." *Id.* at 859. According to the Sixth Circuit, fraudulent transfer laws are designed to level the playing field among creditors, yet the IRS is "an involuntary creditor" and "[t]ax penalties arise not through contractual bargaining but by operation of statute, and no value is or can be given in exchange." *Id.*

We find this reasoning persuasive. Tax penalties do not fit within the obligations contemplated by the Act. Like Tennessee's statute, North Carolina's Act presumes a voluntary exchange between the debtor and the creditor. To start, liability under § 39-23.5(a) of the Act expressly requires an "exchange." N.C. Gen. Stat. § 39-23.5(a) (discussing fraudulent obligation when the obligation was incurred "without receiving a reasonably equivalent value in exchange"). And under § 39-23.6(5), an obligation is incurred "[i]f oral, when it becomes effective between the parties; or . . . [i]f evidenced by a record, when the record signed by the obligor is delivered to or for the benefit of the obligee." *Id.* This provision suggests that for an obligation to be incurred as contemplated by the Act, an oral or written agreement must take place.

But none of that takes place with an IRS tax penalty obligation. Yahweh Center and the IRS did not orally agree on the tax penalties. Likewise, they did not enter into a written "record" for such penalties. The tax code required the IRS to impose taxes, tax penalties and interest against Yahweh Center. The IRS had no choice.

> A tax liability is in no sense a debt for a good or a service the government entrusts to the taxpayer pending payment. The IRS does not choose whom to "entrust" with tax liabilities, nor can it always make an individualized determination of when to enter into a forbearance agreement with respect to the payment of those liabilities.

11

*Schlossberg v. Barney*, 380 F.3d 174, 180 (4th Cir. 2004); *accord In re Haas*, 31 F.3d 1081, 1088 (11th Cir. 1994) ("The IRS is an involuntary creditor; it does not make a decision to extend credit. This inheres in the nature of taxation. The IRS files because that is what the statute directs it to do."); *see also United States ex rel. IRS v. McDermott*, 507 U.S. 447, 454–55 (1993) (finding the "first-to-record" presumption of liens to be "out of place" in the federal tax lien context since such presumption typically assumes voluntary transactions whereas the government "cannot indulge the luxury of declining to hold the taxpayer liable for his taxes").[7]

Applying the fraudulent transfer provisions to tax penalties would be cramming a square peg into a round hole. Since tax penalties are not obligations incurred as contemplated by the Act, it cannot be the "applicable law" required for Cook to bring this action under 11 U.S.C. § 544(b)(1). And if there is not applicable law for Cook's § 544(b)(1) claim, the claim must be dismissed. Therefore, we affirm the district court's dismissal of Cook's challenge to the tax penalty obligations.

We also affirm the district court's dismissal of Cook's claim with respect to Yahweh Center's previous payments of tax penalty obligations. The district court determined that

---

[7] The fact that *Schlossberg*, *Haas* and *McDermott* discuss tax liabilities, as opposed to tax penalties, does not present any meaningful difference in our conclusion because the compelled imposition of an obligation is the same with both. Cook concedes that general tax obligations are not voidable under § 544. Cook explains tax obligations are different because, in return for taxes, taxpayers receive the benefits government provides with the taxes it collects. Fair enough. But it seems a stretch to say those benefits are a "reasonably equivalent value" for the taxes paid. Indeed, taxes are not subjected to the "reasonably equivalent value" analysis. If underlying taxes are not subjected to that analysis, we see no reason why tax penalties, whose purpose is to negatively incentivize taxpayers to pay their taxes and to ensure our tax system remains intact, should be treated differently.

such payments were not voidable because they resulted in a dollar-for-dollar reduction in the tax obligation debt and, thus, constitute "reasonably equivalent value." We agree that the payment of a legitimate obligation reduces that obligation dollar for dollar and constitutes "reasonably equivalent value."[8]

Here, the district court appears to confine its discussion about the significance of a dollar-for-dollar reduction in an obligation to the overall tax obligations, about which there is no challenge, as opposed to the tax penalty obligations, about which there is a challenge. If so, that analysis may comport with our discussion here. To be clear, however, our conclusion about the tax penalty payments turns on the legitimacy of the underlying tax penalty obligation; not the fact that the payments reduced the amount of the tax penalty obligations dollar for dollar. Since the underlying tax penalty obligation is not voidable, neither are Yahweh Center's payments on that obligation.

III.

For the foregoing reasons, the district court's judgment is

*AFFIRMED*.

---

[8] But this dollar-for-dollar approach only applies to a legitimate obligation. If the obligation was not acquired in return for reasonably equivalent value, then paying it off would still be avoidable even though as a matter of math it reduced an obligation dollar for dollar. Imagine that a debtor gave a $1,000,000 note in exchange for a pack of gum. That debt would not be for equivalent value. And payments on that $1,000,000 debt obligation would be voidable even though the payments reduced the obligation dollar for dollar.